**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 10-62264-Civ-SCOLA

JAMES S. SALLAH, as Receiver for
MRT LLC and MRT HOLDINGS LLC,

    Plaintiff,
vs.

WORLDWIDE CLEARING LLC, *et al.*,

    Defendants.
_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on cross-motions for summary judgment between Defendant Turn Key Hedge Fund, Inc. and Plaintiff, James S. Sallah, as Receiver for MRT LLC (ECF Nos. 206 & 242). For the reasons explained in this Order, Defendant Turn Key's motion for summary judgment is denied, and Plaintiff Sallah's motion for summary judgment is granted in part and denied in part.

### I. BACKGROUND[1]

This case is brought by the Receiver of MRT LLC, James S. Sallah, in an effort to avoid allegedly fraudulent transfers related to a purported Ponzi scheme operated by James Clements and Zeina Smidi through MRT LLC. (*See generally* Am. Compl., ECF No. 6.) Defendant Turn Key Hedge Fund, Inc. provides consulting services regarding the formation of hedge funds as well as ongoing administrative services to hedge funds which are already operational. In March 2006, Turn Key was hired by Smidi to form the hedge fund Orchard FX Partners, Ltd. Turn Key was hired by Smidi in her individual capacity to perform services for Smidi individually and/or Orchard FX Partners, Ltd. and related entities. In the application and set-up process, Smidi identified MRT LLC

---

[1] These facts are taken from Turn Key's Statement of Facts, (ECF No. 207), which are undisputed by Sallah, (Pl.'s Resp. to Def.'s Stmt. Material Facts, ECF No. 242-2), and from Sallah's Counterstatement of Material Facts (ECF No. 242-2). The facts in Sallah's Counterstatement of Material Facts are deemed admitted since they are supported by evidence in the record, and because Turn Key did not file an opposing statement of facts controverting Plaintiff's Counterstatement. Fed. R. Civ. P. 56(e); S.D. Fla. L.R. 56.1(b); *see also Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1245-1246 (S.D. Fla. 2009).

as her employer. Between March and July 2006, Smidi paid Turn Key $12,555.79, all from checks issued on accounts identified as "MRT, LLC" and "MRT, LLC Payroll Account." Turn Key did not provide any reasonable equivalent value to MRT LLC for the $12,555.79 that it received from MRT LLC.

## II. LEGAL STANDARDS

### A. *Motion for Summary Judgment*

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); s*ee also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of a material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). A court may not weigh conflicting evidence to

resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### B. *Fraudulent Transfers Under Chapter 726 Of The Florida Statutes*

Under Florida's Uniform Fraudulent Transfer Act, a creditor may avoid, or rescind, a transfer of assets made from a debtor to a transferee if the transfer was fraudulent. Fla. Stat. § 726.108(1)(a) (2010).[2] A transfer is fraudulent if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor – in other words if the transfer was *actually* fraudulent. Fla. Stat. § 726.105(1)(a) (2010). A transfer may also be avoided based on *constructive* fraud. Specifically, a transfer is fraudulent if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and (1) the debtor was "engaged or about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or (2) the debtor "intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." Fla. Stat. § 726.105(1)(b) (2010).

Section 726.109(1) provides a "good faith" defense to a transfer that was actually fraudulent. "A transfer or obligation is not voidable under s. 726.105(1)(a) against a person who took in good faith and for a reasonably equivalent value." Fla. Stat. 726.109(1) (2010). "The relevant question is whether the transferee had actual knowledge of the debtor's fraudulent purpose or had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of the transferor's fraudulent purpose." *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1320 (M.D. Fla. 2009).

### III.  DISCUSSION

Turn Key argues that it was mistakenly caught up in Sallah's widely cast investigation net; that it was not an investor in the alleged Ponzi scheme operated by Smidi through MRT LLC. The affidavit from Turn Key's attorney Michael Lapat, which is undisputed by Sallah, reveals that Turn Key provided services to Smidi, and that the money to pay for these services was paid by MRT LLC. Sallah admits that Turn Key was not an investor in the alleged Ponzi scheme, and that the language in the Amended Complaint is imprecise in this regard. However, Sallah maintains that it does not matter, for purposes of avoiding fraudulent transfers, that Turn Key was not an investor in

---

[2] "'Transfer' . . . includes payment of money." Fla. Stat. § 726.102(12) (2010).

MRT LLC, because Turn Key became a transferee when it accepted payments from MRT LLC. In other words, Sallah argues Smidi fraudulently paid Turn Key with funds from MRT LLC, and that Turn Key never conferred any reasonably equivalent value to MRT LLC in exchange for the money it received.

Sallah is correct in his assertion that the fact that Turn Key was not an investor of MRT LLC is not material to Sallah's ability to prevail under Florida's Uniform Fraudulent Transfer Act. It is, however, necessary for Sallah to prove that (1) a transfer was made, (2) by a debtor,[3] (3) and that the transfer was either actually fraudulent or constructively fraudulent. Fla. Stat. §§ 726.105 – 726.106 (2010). In order for Turn Key to prevail on its "good faith" defense, it must establish: (1) that it did not have actual or constructive notice of Smidi's fraudulent purposes, and (2) that a reasonably equivalent value was conveyed to MRT LLC in exchange for the money paid by MRT LLC to Turn Key.

After a corporation, which was used by its principals to defraud investors, has been "cleansed" through receivership, the corporation has viable claims "against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership." *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 551 (Fla. Dist. Ct. App. 2003). In other words, after a corporation has been placed into receivership, it becomes a creditor with respect to assets which were fraudulently transferred away. In this scenario, the principals, who were operating the illegal scheme, are debtors of the corporation for their fraudulent activities. *See id.* at 550-51. Further, recipients of corporate assets are transferees, regardless of whether they were aware of the wrongdoing of the principals.

A Ponzi scheme is a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors. Money from the new investors is used directly to repay or pay interest to earlier investors, usually without any operation of revenue-producing activity other than the continual raising of new funds." *Black's Law Dictionary* 1278 (9th ed. 2009). "With respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud." *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011).

---

[3] The existence of a debtor necessarily implies the existence of a creditor. *See Black's Law Dictionary* 464 (9th ed. 2009) (defining "debtor" as "[o]ne who owes an obligation to another, especially an obligation to pay money").

> A Ponzi scheme is by definition fraudulent. By extension, any acts taken in furtherance of the Ponzi scheme, such as paying brokers' commissions, are also fraudulent. Every payment made by the debtor to keep the scheme on-going was made with the actual intent to hinder, delay, or defraud creditors, primarily the new investors.

*In re World Vision Entm't, Inc.*, 275 B.R. 641, 656 (M.D. Fla. 2002).

Sallah argues that because Smidi was operating a Ponzi scheme through MRT LLC, she is a debtor of MRT LLC now that it has been placed in receivership. Sallah further relies on the fact that Smidi was operating a Ponzi scheme through MRT LLC to establish her actual intent to defraud creditors. Sallah relies exclusively on a default judgment entered in a separate case to establish the fact that Smidi was operating a Ponzi scheme through MRT LLC. (Pl.'s Opp'n to Def.'s Mot. Summ. J. 11, ECF No. 242.) Sallah requests this Court take judicial notice of the default judgment and the allegations of a Ponzi scheme in the separate case. (Resp. to Def.'s Mot. To Strike 5, ECF No. 299.)

It would not be appropriate for this Court to take judicial notice that Smidi was operating a Ponzi scheme through MRT LLC based on the allegations and default judgment in a separate case because this is a disputable fact in this action. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Given this decision, Sallah has not presented any evidence in this case that Smidi was actually operating a Ponzi scheme. Accordingly, Sallah has not established that Smidi was a debtor of MRT LLC, nor has he established the existence of Smidi's actual intent to defraud MRT LLC.[4] Similarly, although Sallah has established that Turn Key did not provide any reasonable equivalent value to MRT LLC for the $12,555.79 that it received, Sallah has not established the remaining criteria set out in Florida Statute Section 726.105(1)(b). Accordingly, summary judgment cannot be granted in favor of Sallah, except for the single, undisputed fact that Turn Key did not provide any reasonable equivalent value to MRT LLC for the $12,555.79 that it received from MRT LLC.

Turn Key's Motion for Summary Judgment is based on two arguments: (1) Turn Key was not an investor of MRT LLC, and (2) Turn Key's receipt of money from MRT LLC does not constitute a transaction under Florida's Uniform Fraudulent Transfer Act. (Def.'s Mot. Summ. J. 1, 2, ECF No. 208.) As to the first argument, Florida's Uniform Fraudulent Transfer Act is not limited to investors only. The Act applies to all transferees, and there is undisputed evidence that Turn Key

---

[4] Even if Sallah had established the existence of the Ponzi scheme it is not clear, based on the facts of this case, that Smidi's payments to Turn Key with MRT LLC funds were made *in furtherance of* the alleged Ponzi scheme based on the rationale set forth in cases like *In re World Vision Entertainment, Inc.*, 275 B.R. 641, 656 (M.D. Fla. 2002).

was a transferee of corporate assets from MRT LLC.  Regarding Turn Key's second argument, Turn Key's own affidavit establishes that it received $12,555.79 from MRT LLC.  (Lapat Aff. ¶¶ 15, 20, 22, 24 & 27, ECF No. 208-3.)  There is no dispute that a transfer was made from MRT LLC to Turn Key.  In short, the only evidence that Turn Key has presented is the fact that it did business with Smidi, and accepted payments which it was aware were *not* coming from Smidi directly but rather from MRT LLC.  Turn Key has presented no evidence that it ever conveyed any benefit directly or indirectly to MRT LLC in exchange for the money it received from MRT LLC.  Additionally, Turn Key failed to controvert Sallah's Counterstatement of Material Facts.  Accordingly, Turn Key's motion for summary judgment is denied.

## IV.  CONCLUSION

Defendant Turn Key has not presented sufficient record evidence to support its motion for summary judgment.  Similarly, Plaintiff Sallah, has not presented sufficient record evidence to support its motion for summary judgment, except to establish the fact that Turn Key did not provide any reasonable equivalent value to MRT LLC for the $12,555.79 that it received from MRT LLC.  *See* Fed. R. Civ. P. 56(g).

For the reasons detailed in this Order, it is **ORDERED and ADJUDGED** that Defendant Turn Key Hedge Fund, Inc.'s Motion for Summary Judgment (ECF No. 206) is **DENIED**.  Plaintiff James S. Sallah's Motion for Summary Judgment (ECF Nos. 242) is **GRANTED IN PART and DENIED IN PART**, consistent with this Order.  Relatedly, Turn Key's Motion to Strike is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, on February 7, 2012.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

Copies to:
*Robin S. Rosenbaum, U.S. Magistrate Judge*
*Counsel of record*
*Pro Se parties*