UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-62264-CIV-SCOLA/ROSENBAUM

JAMES D. SALLAH, as Receiver for MRT LLC
and MRT Holdings LLC,

                Plaintiff,

v.

WORLDWIDE CLEARING LLC, *et al.*,

                Defendants.
_____/

**ORDER**

      This matter comes before the Court upon the Receiver's Motion to Compel Better Discovery Responses from Defendant Geegee Morgan [D.E. 450]. The Court has reviewed the Receiver's Motion, all filings in support thereof and in opposition thereto, and the record in this matter, and is otherwise duly advised in the premises. After careful consideration, the Court now grants in part and denies in part the Receiver's Motion, as set forth below.

## *I.  Background*

      This case arises out of *Katz v. MRT, LLC*, Case No. 07-61438-CIV-COHN (S.D. Fla.) ("*Katz* Litigation"), a class action that alleged that MRT Holdings, LLC, MRT LLC, and others (collectively, the "*Katz* Defendants") had engaged in a Ponzi scheme that raised in excess of $50 million. *See Katz*, Case No. 07-61438 at D.E. 1. The *Katz* Plaintiffs had all invested in the alleged scheme and lost money. *See id.* According to the *Katz* complaint, the *Katz* Defendants solicited the *Katz* Plaintiffs and others to make loans to the *Katz* Defendants, purportedly for the *Katz* Defendants

to use to trade foreign-currency futures offshore with Swiss banks. *See id.* The *Katz* Plaintiffs further asserted that the *Katz* Defendants promised returns on investments ranging between 12% annually and 11% monthly. *See id.* In reality, however, the *Katz* Plaintiffs averred, the *Katz* Defendants made fraudulent representations about what they were doing with the investments and, in classic Ponzi-scheme form, used monies from the later investors to pay off the earlier investors. *See id.*

During the course of the *Katz* Litigation, the *Katz* Plaintiffs obtained default judgments against certain of the *Katz* Defendants (the "Defaulted *Katz* Defendants"). *See* D.E. 6; *see also Katz*, Case No. 07-61438, D.E. 18; D.E. 36. The Defaulted *Katz* Defendants entered into a class-action settlement agreement with the *Katz* Plaintiffs, and Judge Cohn entered an order approving that settlement agreement on November 23, 2009, after notice to the class and a fairness hearing. *See* D.E. 6 at ¶¶ 14 - 15; *see also Katz*, Case No. 07-61438, D.E. 83. That same day, Judge Cohn entered final judgment for the *Katz* Plaintiff Class for $50 million. D.E. 6 at ¶ 16; *see also Katz*, Case No. 07-61438, D.E. 87.

At the *Katz* Plaintiffs' request, Judge Cohn then appointed James D. Sallah ("Receiver"), Plaintiff in the pending case, as the Receiver for the Defaulted *Katz* Defendants, referred to in the appointing order as the "Receivership Entities." *See* D.E. 6 at ¶ 17; *see also Katz*, Case No. 07-61438, D.E. 90. According to the order appointing the Receiver, the Receiver was to investigate the affairs of the Receivership Entities and implement legal proceedings for the benefit of the Receivership Entities, their investors, and their creditors for any monies that may have been illegally or otherwise wrongfully misappropriated or transferred from the Receivership Entities. *See* D.E. 6 at ¶ 2; *see also Katz*, Case No. 07-61438, D.E. 90.

Based on the appointing order in *Katz*, Plaintiff James D. Sallah, as Receiver, brought the instant matter seeking to recover payments that the Receivership Entities made to certain purported investors in the Receivership Entities, according to the Receiver, "without any apparent investment or, alternatively, in excess of their respective investments" ("False Profit Payments"). *See* D.E. 6 at ¶¶ 18 - 20. The Amended Complaint in the instant cases asserts that Defendant Geegee Morgan received False Profit Payments. *See generally* D.E. 6. Accordingly, the Receiver seeks to recover any such payments that Morgan allegedly obtained. *See id.*

In furtherance of that goal, the Receiver served on Defendant Morgan his First and Second Requests for Production. *See* D.E. 450 at ¶¶ 1 - 2; D.E. 450-1; D.E. 450-2. These Requests sought the following:

1. All communications between Defendants and MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

2. All documents Defendants received from or sent to MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

3. All documents which show Defendants' funds paid to MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

4. All documents which show funds received by Defendants from MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

5. All documents which show services provided for value by Defendants to MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

      6. All documents Defendants signed regarding any investment with MRT, LLC or MRT Holdings, LLC.

      7. Any and all checks, canceled checks, letters, bank statements, memoranda or any document of any kind which would show payment or a transfer of funds to Defendants from MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

      8. Any and all checks, canceled checks, letters, bank statements, memoranda or any document of any kind which would show payment or a transfer of funds from Defendants to MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

      9. Any and all written or recorded statements or depositions taken from witnesses, lay or expert, concerning any issues in this cause, which are not considered work product.

      10. For corporate Defendants (i.e., those who are not individual), all corporate formation documents, all corporate formation documents, including all by-laws, articles of incorporation, corporate filings, and organizational charts.

      11. All documents regarding the affirmative defenses asserted in your Answer.

D.E. 450-1 at 4 - 6.

      [2-]1. Any documents you have that may support any denial by you of any allegation made in the complaint filed against you.

      [2-]2. Any documents that you have to show that MRT was not a Ponzi Scheme.

      [2-]3. Any documents that you have to show that you paid MRT more money than you received from MRT.

      [2-]4. Your monthly bank account and brokerage account statements for the period 2005-2007.

D.E. 450-2.

Defendant Morgan responded to the First Request for Production by objecting "on the grounds that the request would require the Defendant to provide information which may incriminate her, and Defendant has a right not to produce such information under the Fifth Amendment of the Constitution of the United States." D.E. 450-3.  Morgan provided no further response to the First Request for Production.

As for the Second Request for Production, Morgan objected as follows:

a) The request would require the Defendant to provide information which may incriminate her, and Defendant has a right not to produce such information under the Fifth Amendment of the Constitution of the United States.

b) Item 4 of the Request is overbroad and burdensome and not reasonably limited to discovery which may result in the discovery of admissible evidence.

D.E. 450-4.  As with the response to the First Request for Production, Morgan submitted no further objection, response, or support for her position.

The Receiver then filed the pending Motion to Compel Better Discovery Responses from Defendant Geegee Morgan [D.E. 450] ("Motion").  In his Motion, the Receiver complains that Morgan has made an improper blanket Fifth Amendment objection to the Requests for Production. D.E. 450 at ¶¶ 2 - 5.  Accordingly, the Receiver asks this Court to overrule Morgan's Fifth Amendment objection and compel Morgan to provide "complete responses" to the Requests for Production.  *Id.* at 3.

In response, Morgan retorts that her act of producing the requested documents might, in and of itself, have an incriminating, testimonial aspect to it that is protected by the Fifth Amendment. *See* D.E. 459.  Consequently, she asks the Court to deny the Motion to Compel.

The Receiver, however, disagrees with Morgan's analysis, claiming that "Morgan's assertion of the act-of-production doctrine has no factual or legal basis." D.E. 464 at ¶ 9. Thus, the Receiver urges, the Court should overrule Morgan's objections and order Morgan to provide "complete responses" to the Requests for Production. *Id.* at 5.

On April 9, 2012, the Court held a hearing on the Receiver's Motion. During that hearing, the Receiver withdrew Requests for Production 10 and 11 from the First Requests for Production and Requests 1 and 2 from the Second Requests for Production. Additionally, Morgan confirmed her withdrawn objection to Request 9 from the First Requests for Production and stated that she had no documents responsive to that Request. The Receiver further clarified that although the Requests for Production refer to "Defendants," they should be construed as pertaining only to Defendant Morgan. Finally, the Receiver requested an opportunity to file a brief regarding whether the applicable statutes of limitations would preclude the United States from bringing criminal charges against Defendant Morgan. The Court granted the Receiver's request.

In his Supplemental Brief in Support of Motion to Compel [D.E. 473], the Receiver acknowledges that the statute-of-limitations period for mail fraud, wire fraud, securities fraud, money-laundering, and conspiracy charges, in violation of 18 U.S.C. §§ 1341, 1343, 1348, 1349, 1956, 1957, and 371,[1] respectively, is five years. *See* D.E. 473 (citing 18 U.S.C. § 3282(a)). He further concedes that, as far as the Receiver currently knows, Morgan's last financial transaction with the *Katz* Defendants occurred on August 16, 2007, and the final transaction of the *Katz* Defendants

---

[1]The Receiver's brief cites 18 U.S.C. § 317. Because this section does not exist and, further, because 18 U.S.C. § 371 sets forth the law against conspiracy, the Court construes the reference to Section 317 as a typographical error.

happened on June 25, 2008 — both of which fall within the past five years.[2]  *See* D.E. 473 at ¶ 3.

## *II. Discussion*

The Fifth Amendment of the United States Constitution guarantees that "[n]o person shall . . . be compelled in any criminal case to be a witness against [herself] . . . ."  U.S. Const. amend. V. As the Supreme Court has directed, "This provision . . . must be accorded liberal construction in favor of the right it was intended to secure."  *Hoffman v. United States*, 341 U.S. 479, 486 (1951) (citations omitted).

### *A.  A "Substantial and Real Hazard of Self-incrimination"*

To trigger the protection of the Fifth Amendment, the Receiver suggests, an individual must be "under indictment, under arrest, or . . . under investigation."  *See* D.E. 464 at ¶ 8.  But that is not the test.  Rather, an individual claiming the protection of the Fifth Amendment must show only a "substantial and real hazard of self-incrimination."  *United States v. Argomaniz*, 925 F.2d 1349, 1353 (11th Cir. 1991) (quoting *Grosso v. United States*, 390 U.S. 62, 65 (1968)) (internal quotation marks omitted).  Thus, "[a] witness may properly invoke the privilege when [s]he 'reasonably apprehends a risk of self-incrimination, . . . though no criminal charges are pending against [her] . . . and even if the risk of prosecution is remote.'"  *Id.* (quoting *In re Corrugated Container Anti-Trust Litig.*, 620 F.2d 1086, 1091 (5th Cir. 1980), *cert. denied sub nom. Adams Extract Co. v. Francey*, 449 U.S. 1102 (1981)) (internal quotation marks omitted).

Once the incriminating nature of the information sought is established, a court presumes the reasonableness of a claimed apprehension of prosecution unless genuine questions exist about the

---

[2]Although the Court announced during the hearing that it would permit Morgan to respond to the Receiver's Supplemental Brief, in light of the contents of the Receiver's Supplemental Brief, the Court does not require additional response from Morgan.

government's legal ability to prosecute. *United States v. Sharp*, 920 F.2d 1167, 1171 (4th Cir. 1990) (citing U.S. Const. Art. II, § 3, for the proposition that such an assumption is compelled by the government's general constitutional obligation faithfully to execute its criminal laws, principally by prosecuting those whose commission of crime it has sufficient evidence to prove). "[C]ourts should not engage in raw speculation as to whether the government will actually prosecute." *Id.* (citing *United States v. Edgerton*, 734 F.2d 913, 921 (2d Cir. 1984) (citation omitted)).

Here, the Receiver alleges that the Defaulted *Katz* Defendants "fraudulently offered unregistered securities for sale in a classic Ponzi scheme and in violation of applicable federal securities laws." D.E. 6 at ¶ 9. Additionally, he contends that Defendants in this case, including Defendant Morgan, received payments from the Defaulted *Katz* Defendants "without any apparent investment or, alternatively, in excess of their respective investments . . . . [T]he money used to make those payments came directly from the funds invested by other investors in MRT LLC as there were no legitimate returns on investment." *Id.* at ¶ 19. Further describing Defendants' purported role in the pending matter, the Receiver states that "the Complaint in the instant action seeks to avoid certain fraudulent transfers related to the scheme which is at the heart of the claims in [*Katz*]." D.E. 3 at 1.

A review of the Requests for Production leads to the conclusion that through these discovery requests, the Receiver attempts to gather documents demonstrating the fraudulent nature of the monetary transfers to Defendants such as Morgan. While such requests certainly appear to fall squarely within the scope of relevant discovery, it is equally clear that information tending to show that Morgan received fraudulent transfers of money from a "classic Ponzi scheme" could reasonably be expected to be incriminating. Among other potential criminal violations, such evidence might

fairly be anticipated to be able to be used to establish mail fraud, wire fraud, securities fraud, money-laundering, or conspiracy charges, in violation of 18 U.S.C. §§ 1341, 1343, 1348, 1349, 1956, 1957, or 371. Nor has the Receiver suggested any reason why the government might have a legal inability to prosecute Morgan. Although the Receiver speculates that the government does not appear to intend to press criminal charges, as the Receiver has recognized, the statute of limitations for filing such charges has not yet run and, even under the Receiver's view of the facts, may not run until as late as June 25, 2013. Under these circumstances, Morgan has sufficiently demonstrated a "substantial and real hazard of self-incrimination" and may invoke the protections of the Fifth Amendment to the extent that they apply.

### *B.  A Blanket Assertion of the Privilege?*

Next, the Receiver characterizes Morgan's responses to the Requests for Production as an impermissible "blanket" assertion of the Fifth Amendment. It is well established that a person may not make a blanket objection to testifying or producing records, based on her Fifth Amendment privilege, but instead, must invoke the privilege question by question or request by request. *See United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1970).[3] The restriction against blanket Fifth Amendment objections, however, does not prohibit a person from making a single Fifth Amendment objection to known multiple requests, all of which implicate self-incrimination concerns. In other words, nothing proscribes efficiency in invoking the Fifth Amendment privilege. Instead, the ban on blanket Fifth Amendment objections prevents a person from wholesale refusing to answer any questions or produce any documents without specifically considering whether the information sought

---

[3] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

may actually raise a "substantial and real hazard of self-incrimination."

Although Morgan did not repeat the invocation of her Fifth Amendment right fifteen separate times in her written responses to the Requests for Production, that fact does not inexorably mean that Morgan made a blanket objection. Rather, upon review of the Requests for Production and Morgan's Response, the Court understands Morgan to have invoked her Fifth Amendment privilege separately with regard to each and every Request for Production, even though she efficiently made the objection in a single paragraph. Indeed, Morgan's withdrawal of her objection to Request 9 from the First Requests for Production demonstrates that she reviewed each request separately and intended her single response to apply individually to each request. *See* D.E. 250-3. Similarly, besides invoking the Fifth Amendment privilege in Morgan's Objections to Receiver's Second Request for Production [D.E. 450-4], in the same single, general response, Morgan expressly identifies "Item 4" separately and invokes a second objection — that of overbreadth and burdensomeness — even though the response includes no individual entry for Request for Production 4. *See id.* Thus, the Court will not overrule Morgan's Fifth Amendment objection on the basis that she made a blanket assertion of the privilege.

### C. The Applicability of the Fifth Amendment Privilege to the Production of the Documents

Morgan invokes her Fifth Amendment privilege not to the contents of the documents that the Receiver seeks but, rather, to the act of her production of them. It has long been established that a person may be required to produce specific documents, even though they contain incriminating information. *See United States v. Hubbell*, 530 U.S. 27, 35-36 (2000) (citing *Fisher v. United States*, 425 U.S. 391 (1976)). Where documents are voluntarily prepared before they are requested, for example, the Supreme Court has held that such documents do not contain "compelled testimonial

evidence" within the meaning of the Fifth Amendment, even if the contents are incriminating. *Id.* at 36 (citing *Fisher*, 425 U.S. at 409-10). Similarly, the Fifth Amendment does not protect the contents of documents produced by someone other than the person invoking the privilege. *See id.*

But the Supreme Court has recognized that the act of producing documents may involve a testimonial component that may enjoy the Fifth Amendment privilege, separate and apart from whether the contents of the documents at issue are protected. *Id.* Sometimes, the act of production can implicitly communicate "statements of fact." *Id.* For example, producing documents can act as an admission that the requested papers exist, fall within the person's possession or control, and are authentic. *See id.*

Fifth Amendment protection is not triggered, however, "where . . . [merely] some physical act [is compelled], *i.e.*, where the individual is not called upon to make use of the contents of his or her mind," or where it can be shown "with 'reasonable particularity' that, at the time [that] the act of production [was sought to be compelled], . . . the materials [were already known of], thereby making any testimonial aspect [of the production] a 'foregone conclusion.'" *In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011*, ___ F.3d ___, 2012 WL 579433, *7 (11th Cir. Feb. 23, 2012) ("*Grand Jury Subpoena*") (citations omitted).

In *Grand Jury Subpoena*, the Eleventh Circuit recently considered the contours of the Fifth Amendment privilege as it applies to acts of production. There, law-enforcement officers had seized computer equipment containing encrypted information that the government suspected might include child pornography. Despite its best efforts, law enforcement was unable to decrypt the contents of the computer equipment. Consequently, a grand-jury subpoena was issued for the owner of the computer equipment to produce the "unencrypted contents" of it, as well as "any and all containers

or folders" on the computer equipment. The owner invoked his Fifth Amendment rights, asserting that by decrypting the contents of the computers, he effectively would be testifying that he was the one who had placed the contents on the hard drive, encrypted the contents, and could review them whenever he pleased. The Eleventh Circuit upheld that invocation.

In explaining the basis for its decision, the court stated, "The touchstone of whether an act of production is testimonial is whether the government compels the individual to use 'the contents of his own mind' to explicitly or implicitly communicate some statement of fact." *Id.* at *7 (quoting *Curcio v. United States*, 354 U.S. 118, 128 (1957)). Applying this consideration to the *Grand Jury Subpoena* facts, the court concluded that decryption and production of the hard drives "would require the use of the contents of [the owner's] mind and could not be fairly characterized as a physical act that would be nontestimonial in nature." *Id.* at *8. The court further expounded, "Nothing in the record before us reveals that the Government knows whether any files exist or the location of those files on the hard drives; what's more, nothing in the record illustrates that the Government knows with reasonable particularity that [the owner] is even capable of accessing the encrypted portions of the drives." *Id.* Forcing the owner to decrypt and produce the files, however, would prove all of these aspects of the Government's case. *See id.* While the law does not require the documents sought to be identified precisely, "it does require some specificity in . . . requests — categorical requests for documents . . . [anticipated as] likely to exist simply will not suffice." *Id.* at *9 (citations omitted).

With these considerations in mind, the Court reviews each of the Requests for Production to determine whether Morgan can properly invoke her Fifth Amendment privilege for the act of production.

**Requests for Production**

1.  All communications between Defendants and MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

2.  All documents Defendants received from or sent to MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

Morgan complains that the use of the term "agents" in these requests requires her to use her discretion in determining and, through her choice of documents produced, revealing whom she believes to serve as agents of the *Katz* Defendants. During the hearing, however, the Receiver stated his willingness to construe the term "agents" in the requests for productions as referring only to Clements, Smidi, and Bradshaw.

With that modification, the Court finds that Requests 1 and 2 call for objectively determinable universes of documents and do not require Morgan to employ the "contents of [her] mind" to choose what documents might be responsive to the requests. Put simply, Morgan need not exercise any judgment to respond to the requests. For example, under Request 1, either a document is a communication between Morgan[4] and the *Katz* Defendants or their agents, or it is not; there is no grey area or room for discretion. Moreover, in order for Morgan to have received payments from the *Katz* Defendants, they must have had communications of some type with them. And, since the Defaulted *Katz* Defendants settled with the *Katz* Plaintiffs and the Receiver effectively represents the interests of the *Katz* Plaintiff Class, communications that the *Katz* Defendants had with Morgan should be available and subject to authentication through the *Katz* Defendants. Indeed, the Receiver stated that he had already engaged in discussions with the *Katz* Defendants about the False Profit

---

[4]During the April 9, 2012, hearing, the Receiver clarified that his references to "Defendants" in the Requests for Production should be read to mean Defendant Morgan only.

Payments during the course of his lengthy investigation precipitating the instant litigation. As a result, the act of producing these responsive documents does not divulge any new information. For these reasons, Morgan's Fifth Amendment objections to Requests 1 and 2 are overruled.

3.  All documents which show Defendants' funds paid to MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

4.  All documents which show funds received by Defendants from MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

As with Requests 1 and 2, Morgan objects to the use of the term "agents" in Requests 3 and 4 as requiring her to employ her judgment to determine what documents might be responsive. The Receiver's modification of that term to refer only to Clements, Smidi, and Bradshaw, however, renders moot Morgan's objection in this respect. Morgan does not identify any other manner in which her act of production in response to these requests might otherwise incriminate her in a manner that might be protected by the Fifth Amendment. Moreover, the Receiver has explained that he anticipates receiving documents such as statements from the MRT Entities and checks and other similar financial documentation in response to these requests. Such documents may be authenticated by the MRT Entities or the financial institution involved. Thus, the Court grants the Receiver's Motion to Compel production of documents responsive to Requests 3 and 4, as modified.

5.  All documents which show services provided for value by Defendants to MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

Morgan complains that production of documents responsive to this request could be self-incriminating in that the request seeks all documents that "show services provided for value by [Morgan] to [the *Katz* Defendants]." As the Receiver has explained his understanding of Morgan's

purported role in the alleged scheme, Morgan convinced others to invest in the MRT Entities. By producing documents in response to this request, Morgan asserts that she would be admitting that she provided some type of service for payment to the MRT Entities. In response, the Receiver explains that based on his investigation, he believes that Morgan held the title of "account executive" and that tax documents such as W-2s should have been produced as a result. Thus, the Receiver seeks tax records and contracts between Morgan and the MRT Entities.

When Request 5 is construed to seek only tax records and contracts, compelled production of documents in Request 5 does not violate the Fifth Amendment privilege. First, under *Fisher*, the compelled production of tax records does not violate the Fifth Amendment, as it involves only a physical production of records known with reasonable particularity to exist, and the records can be authenticated other than through the tax payer. *See Fisher*, 425 U.S. at 405-14. Similarly, neither the production of tax records nor that of contracts requires Morgan to make any judgment calls or exercise discretion in determining what is responsive to the request. And, like the tax records, any contracts could be authenticated by someone other than Morgan — in this case, the MRT Entities or *Katz* Defendants who entered into the contract with Morgan. For these reasons, the Court grants the Receiver's Motion to Compel a response to Request 5, as modified.

6. All documents Defendants signed regarding any investment with MRT, LLC or MRT Holdings, LLC.

Morgan explained that she was troubled by the use of the word "regarding," which she thought required her to exercise judgment concerning which documents might be responsive to the request. In response, the Receiver clarified this request to seek all account-opening documents that Morgan signed with the MRT Entities. The Receiver, of course, is already aware that Morgan had

an account with the MRT Entities. Indeed, that is how she became a Defendant. The act of producing the specified account-opening documents would not violate Morgan's Fifth Amendment right, as the Receiver is already aware of such documents, and he could obtain authorization of them from someone other than Morgan. Moreover, Morgan need not make choices in determining what might be responsive to the request. Instead, the request as modified seeks documents falling into a readily identifiable group. Therefore, the Court grants the Receiver's Motion to Compel as it relates to Request 6 as modified.

7. Any and all checks, canceled checks, letters, bank statements, memoranda or any document of any kind which would show payment or a transfer of funds to Defendants from MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

8. Any and all checks, canceled checks, letters, bank statements, memoranda or any document of any kind which would show payment or a transfer of funds from Defendants to MRT, LLC, MRT Holdings, LLC, and their agents, including but not limited to James Clements, Zeina Smidi, and Ann Bradshaw.

Again, in accordance with the modification stated by the Receiver during the hearing, the Court understands the term "agents" here to refer only to Clements, Smidi, and Bradshaw. Morgan challenges the use of the phrase "document of any kind" as requiring her to exercise her judgment regarding what might show payment or a transfer of funds between Morgan, on the one hand, and MRT, LLC, MRT Holdings, LLC, Clements, Smidi, or Bradshaw, on the other. During the hearing, however, counsel for Morgan agreed that construing the request to seek documents that "directly or indirectly" would show such transactions would satisfy Morgan's Fifth Amendment concerns. The Receiver did not object to this construction. Accordingly, the Receiver's Motion to Compel production of documents responsive to Requests 7 and 8, as modified as indicated above, is granted.

Second Set of Requests for Production

3.  Any documents that you have to show that you paid MRT more money than you received from MRT.

Morgan objects to this request on the basis that it requires her to use the contents of her own mind to determine what might be responsive to the request. The Receiver responds that he is merely seeking financial records. The Court notes that Requests 3, 4, 7, and 8 from the First Set of Requests for Production encompass financial records. Because this request as clarified is duplicative of Requests 3, 4, 7, and 8 from the First Set of Requests for Production, the Court denies the Receiver's Motion to Compel as it relates to this request. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

4.  Your monthly bank account and brokerage account statements for the period 2005-2007.

Nothing about this request requires Morgan to exercise judgment or discretion in determining what documents might be responsive. Nor did Morgan prepare the responsive records in the first place. In short, this request seeks merely the physical production of records that the Receiver already knows exist. The Fifth Amendment does not shield Morgan's act of production in response to this request.

Morgan's additional objection to Request 4 on the basis that it is overbroad and burdensome must likewise fail. Morgan has not explained how the request is either overbroad or burdensome, and she has not provided any evidentiary support for the proposition that the request is unduly burdensome. As this Court's Local Rules provide, "When objections are made to discovery requests, all grounds for the objections must be ***specifically*** stated. . . ." S.D. Fla. L.R. App. A, § I.D.(3) (emphasis added). The Local Rules further state, "Objections should be specific, not generalized." S.D. Fla. L.R. App. A, § III.A.(5); *see also* S.D. Fla. L.R. 26.1(g)(3)(A) ("Where an objection is

made . . . to any production request under Federal Rule of Civil Procedure 34, the objection shall state with ***specificity*** all grounds. . . .") (emphasis added).

Objections that state that a discovery request is "vague, overly broad, or unduly burdensome" are, standing alone, meaningless and do not comply with both the Local Rules and Rule 34's requirement that objections contain a statement of reasons. *See Pitts v. Francis*, 2008 WL 2229524, *2 (N.D. Fla. May 28, 2008). A party objecting on these grounds must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome. *See Benfatto v. Wachovia Bank, N.A.*, 2008 WL 4938418, *4 (S.D. Fla. Nov. 19, 2008) (citing *Convertino v. U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008)). Since Morgan has not indicated how Request 4 is overly broad or unduly burdensome and because she has further not provided any evidentiary support for her bald assertion of burdensomeness, the Court overrules Morgan's objection in this regard and grants the Receiver's Motion to Compel a complete response to Request 4.

### *III. Conclusion*

For the foregoing reasons, the Receiver's Motion to Compel Better Discovery Responses from Defendant Geegee Morgan [D.E. 450] is **GRANTED IN PART and DENIED IN PART**, consistent with the terms of this Order.

**DONE AND ORDERED** this 10th day of April 2012.

*[signature: Robin S. Rosenbaum]*
ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:   Hon. Robert N. Scola, Jr.
      Counsel of Record